IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CITY OF DETROIT POLICE AND FIRE RETIREMENT SYSTEM, DERIVATIVELY ON BEHALF OF NISOURCE INC., : : : : : : Plaintiff, : : v. : : JOSEPH HAMROCK, ARISTIDES S. : CANDRIS, CAROLYN Y. WOO, : DEBORAH A. HENRETTA, ERIC L. : BUTLER, KEVIN T. KABAT, : MICHAEL E. JESANIS, PETER A. : ALTABEF, THEODORE H. BUNTING, : JR., WAYNE S. DEVEYDT, RICHARD : L. THOMPSON : : Defendants, : : and : : NISOURCE INC., : : Nominal Defendant. : | C.A. No. 20-577-LPS |

Carmella P. Keener, COOCH AND TAYLOR, P.A., Wilmington, DE

Daniel S. Sommers, Joshua Handelsman, COHEN MILSTEIN SELLERS & TOLL PLLC, Washington, DC

Richard A. Speirs, Amy Miller, COHEN MILSTEIN SELLERS & TOLL PLLC, New York, NY

Kip B. Shuman, SHUMAN, GLENN & STECKER, San Francisco, CA

Rusty E. Glenn, SHUMAN, GLENN & STECKER, Denver, CO

Brett D. Stecker, SHUMAN, GLENN & STECKER, Ardmore, PA

Ronald A. King, CLARK HILL PLC, Lansing, MI

    Attorneys for Plaintiff

Gregory P. Williams, Raymond J. DiCamillo, Katharine L. Mowery, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE

Walter C. Carlson, Nilofer Umar, Caroline A. Wong, SIDLEY AUSTIN LLP, Chicago, IL

    Attorneys for Defendants

**MEMORANDUM OPINION**

March 9, 2021
Wilmington, Delaware

Case 1:20-cv-00577-LPS   Document 41   Filed 03/09/21   Page 3 of 17 PageID #: 1188



**STARK, U.S. District Judge:**

I.      **INTRODUCTION**

Pending before the Court is Defendants Joseph Hamrock, Aristides S. Canris, Carolyn Y. Woo, Deborah A. Henretta, Eric L. Butler, Kevin T. Kabat, Michael E. Jesanis, Peter A. Altabef, Theodore H. Bunting, Jr., Wayne S. DeVeydt, and Richard L. Thompson's (the "Director Defendants") and Nominal Defendant NiSource Inc.'s ("NiSource" and, together with the Director Defendants, hereinafter "Defendants") Motion to Dismiss the Verified Shareholder Derivative Complaint. (D.I. 28) Defendants seek to dismiss the complaint filed by Derivative Plaintiff City of Detroit Police and Fire Retirement System ("Plaintiff") for failure to make a pre-suit demand on the Director Defendants, as required under Federal Rule of Civil Procedure 23.1. (D.I. 29) Defendants additionally seek dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief may be granted. (*Id.*)

NiSource is a Delaware corporation with its principal place of business in Indiana. (D.I. 2 ("Complaint") ¶ 22) NiSource is in the business of natural gas distribution. (*Id.* ¶ 7) Among other things, NiSource oversees operations at subsidiary utility companies across the United States. (*Id.*) One such subsidiary is Columbia Gas of Massachusetts ("CMA"). (*Id.* ¶ 23)

Plaintiff is a shareholder of NiSource seeking to press claims against the Director Defendants derivatively on behalf of NiSource. (*Id.* ¶ 6) Specifically, Plaintiff alleges the Director Defendants breached the duty of loyalty they owed the company under Delaware law and violated Section 14(a) of the federal Exchange Act, 15 U.S.C. § 78n(a), by causing the company to issue false and misleading proxy statements in 2017 and 2018 ("Proxy Statements"). (*Id.* ¶ 105)[1]

---

[1] In all, the Complaint contains four claims: (1) violation of Section 14(a) of the Exchange Act against the "Proxy Defendants" (i.e., defendants Hamrock, Candris, Woo, Henretta, Butler, Kabat, Jesanis, Altabef, Bunting, and DeVeydt); (2) breach of fiduciary duty against all individual

1

Defendants filed a declaration with exhibits (D.I. 30), as did Plaintiff (D.I. 33). The motion is fully briefed (*see* D.I. 29, 32, 36; *see also* D.I. 35, 37, 38) and was argued by teleconference on March 2, 2021 (D.I. 40) ("Tr.").

For the reasons stated below, the Court will grant the motion.

## II. BACKGROUND

The events leading to this litigation are tragic. On September 13, 2018, CMA employees were working on upgrading and repairing a pipeline main located in Andover, Massachusetts; they were seeking to replace aging cast-iron pipeline with a newer polyethylene pipeline. (D.I. 30 Ex. A at 7-8) The municipal gas distribution system in Andover is a "low pressure" system. (*Id.* at 4-5) In such a system, gas comes in on a main line at high pressure, and then is down-regulated to lower pressure at regulator stations for distribution to end-users in homes and businesses. (*Id.*) As CMA workers replaced the higher-pressure, main pipeline, they left the system intact to prevent service disruptions. (*Id.* at 7-9) Using a bypass pipe to keep flow continuous, CMA began the work necessary to excise the cast-iron piping and replace it. (*Id.*) Downstream, however – beyond the bypass pipe – the regulator station at Winthrop Avenue detected no pressure in the now-bypassed cast iron main. (*Id.*) Unable to detect pressure, the site regulators opened the flow, increasing pressure in the distribution system. (*Id.*) The lines overpressurized and exploded. (*Id.*) A shockwave rippled throughout the distribution system, rupturing gas lines and demolishing houses throughout the greater metropolitan area. (*Id.* at 1)

The impact of what is now referred to as the Greater Lawrence Explosion is detailed in a report of the National Transportation and Safety Board ("NTSB"). (D.I. 30 Ex. A) The NTSB

---

defendants for failing to properly oversee and manage the company; (3) breach of the duty of candor against all individual defendants; and (4) unjust enrichment against all individual defendants. (Complaint ¶¶ 154-73)

describes the great suffering that followed the explosion, including mandatory evacuations of the city, the need to provide humanitarian aid to displaced individuals, and "boil only" water advisories. (*Id.* at 9-10, 13) There were physical injuries and, most sadly, one death. (D.I. 30 Ex. A at abs.)

The United States Attorney for the District of Massachusetts ("USAO") also investigated and eventually charged CMA with criminal violations of portions of the federal Natural Gas Pipeline Safety Act, 49 U.S.C. §§ 60118(a), 60123(a). (D.I. 2 ¶¶ 1-2) CMA pled guilty. (*Id.*) It also agreed to pay a $53 million fine (the largest ever paid in connection with a Pipeline Safety Act prosecution) and paid restitution to those whose lives it had disrupted. (*Id.* ¶¶ 1-5) In July 2020, the Massachusetts Attorney General announced a settlement with CMA for $56 million. (*See* D.I. 32 at 3 n.5, 8-9)

NiSource, as CMA's parent corporation, was not prosecuted but it did enter into a Deferred Prosecution Agreement ("DPA") with the USAO. (*Id.* ¶¶ 99-100) Pursuant to the DPA, NiSource agreed to divest its entire interest in CMA, and was precluded from profiting from that divestment. (*Id.* ¶¶ 3-4) NiSource retained future liability for any additional restitution necessitated by the impact of the explosion. (*Id.* ¶ 4) According to the Complaint, NiSource has incurred losses due to the Greater Lawrence Explosion (including from the divestment of CMA) of approximately $1 billion to date. (*Id.* ¶ 5)

Plaintiff seeks to have NiSource initiate litigation against the Director Defendants to recover money for purported bad faith failure to supervise – what is referred to under Delaware law as a "*Caremark* claim"[2] – and for violations of Section 14(a) of the Exchange Act. That is, Plaintiff's Complaint seeks to hold the Director Defendants financially liable to NiSource for

---

[2] *See In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967-70 (Del. Ch. 1996).

consequences of the explosion. As Vice Chancellor Glasscock of the Delaware Court of Chancery has aptly observed, while cases like these "often invoke judicial sympathies," that emotion does not dictate the proper judicial response. The Vice Chancellor explains:

> Frequently, the facts of the case involve corporate misconduct that has led to material suffering among customers, or to the public at large. A judge in the *Caremark* context must be careful to remember the issues before her. At issue is *not* whether specific or society-wide victims may themselves receive a remedy for corporate misconduct. Instead, the issue is whether the corporation, whose directors have allegedly allowed it to commit bad acts, should *itself* recover damages that ultimately inure to the benefit of the corporate owners, its stockholders. This unusual posture raises the question of whether *Caremark* liability is merely a branch of fiduciary liability designed to make the beneficiaries of that duty whole for breach, or whether it should be seen also as a blunt but useful tool to encourage good corporate citizenship. That question is for academic discussion, not judicial resolution; again, a judge in equity must be mindful that it is the corporation, not that corporation's victims, to whom any recovery will flow.

*Teamsters Local 443 Health Servs. & Ins. Plan v. Chou*, 2020 WL 5028065, at *1 (Del. Ch. Aug. 24, 2020).

### III. LEGAL STANDARDS

#### A. Federal Rule Of Civil Procedure 23.1

Generally, a corporation's board of directors is responsible for determining whether to initiate or pursue a lawsuit on behalf of the corporation. *See* Del. Code tit. 8, § 141; *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 120 (Del. Ch. 2009). This responsibility flows from the "'cardinal precept'" of Delaware corporate law that "'directors, rather than shareholders, manage the business and affairs of the corporation.'" *Id.* (quoting *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984)).

Federal Rule of Civil Procedure 23.1 applies "when one or more shareholders . . . of a corporation . . . bring a derivative action to enforce a right that the corporation . . . may properly

assert but has failed to enforce." Fed. R. Civ. P. 23.1(a). In order to maintain a derivative action on behalf of a corporation in federal court, a shareholder plaintiff's complaint must, among other things, "state with particularity" the following: "(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3); *see also Raul v. Rynd*, 929 F. Supp. 2d 333, 340 (D. Del. 2013). In this way, Rule 23.1 imposes a requirement that "a shareholder plaintiff make a pre-suit demand on the board of directors prior to filing a derivative suit on behalf of the company, or provide a satisfactory explanation for why the plaintiff has not done so." *Raul*, 929 F. Supp. 2d at 340. The "demand requirement allows the corporate machinery to self-correct problems and to safeguard against frivolous lawsuits." *Id.*; *see also Ryan v. Gifford*, 918 A.2d 341, 352 (Del. Ch. 2007).

While Rule 23.1 sets out the pleading standard for derivative actions in federal court (including the specificity of pleading required as to pre-suit demand), the substantive requirements of demand are ultimately a matter of state law. *See King v. Baldino*, 409 F. App'x 535, 537 (3d Cir. 2010). Delaware state law, applicable here, instructs that demand may be excused when making a demand on the board of directors would clearly be futile. *See Aronson*, 473 A.2d at 814-15, *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). Successfully alleging that demand is excused, however, is a "difficult feat under Delaware law." *Ryan*, 918 A.2d at 352 n.23.

If what is at issue in the lawsuit is an actual decision made by the board of directors of a company, then a court must determine whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested or independent; or (2) the challenged decision or transaction was otherwise the product of a valid exercise of business judgment. *See*

*Aronson*, 473 A.2d at 814; *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 820 (Del. Ch. 2005) (explaining that demand is excused if either prong of *Aronson* test is satisfied). If, however, a plaintiff does not challenge a "decision" of the board of directors, then the test articulated in *Rales v. Blasband*, 634 A.2d 927, 930 (Del. 1993) applies. *See In re China Auto. Sys. Inc. Derivative Litig.*, 2013 WL 4672059, at *5 (Del. Ch. Aug. 30, 2013). In applying the *Rales* test, a court must determine "whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." 634 A.2d at 934; *see also In re China Auto. Sys.*, 2013 WL 4672059, at *5.

Ultimately, both the *Rales* and *Aronson* tests focus on the same inquiry: whether a majority of the board had a "personal interest in considering a plaintiff's litigation demand" because they "face[] a substantial risk of liability in the litigation" or otherwise are not disinterested. *Sandys v. Pincus*, 2016 WL 769999, at *12 & n.59 (Del. Ch. Feb. 29, 2016) (collecting cases), *rev'd on other grounds*, 152 A.3d 124 (Del. 2016).

In assessing a motion to dismiss filed pursuant to Rule 23.1, a court considers the well-pleaded allegations of the complaint, the documents incorporated into the complaint by reference, and judicially-noticed facts; in doing so, it draws all reasonable inferences in favor of the plaintiff. *See Raul*, 929 F. Supp. 2d at 337 n.1; *Resnik v. Woertz*, 774 F. Supp. 2d 614, 635 (D. Del. 2011). However, the court is not obligated to accept as true bald assertions, unsupported conclusions and unwarranted inferences, or allegations that are self-evidently false. *See In re Caterpillar Inc. Derivative Litig.*, 2014 WL 2587479, at *7 (D. Del. June 10, 2014).

### B.     Federal Rule Of Civil Procedure 12(b)(6)

The issue presented by a Rule 12(b)(6) motion is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). As with review of a Rule 23.1 motion, when a Court considers a Rule 12(b)(6) motion it accepts as true the well-pleaded allegations of the complaint, drawing all reasonable inferences in favor of the plaintiff. *See Raul*, 929 F. Supp. 2d at 341. A court reviewing a Rule 12(b)(6) motion is not obligated to accept as true bald assertions, unsupported conclusions and unwarranted inferences, or allegations that are self-evidently false. *See id.*

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

## IV. DISCUSSION

### A. The Complaint Fails To Demonstrate That Demand Was Excused For The Section 14(a) Claim

Section 14(a) claims are subject to the demand requirement imposed by Federal Rule of Civil Procedure 23.1. *See, e.g.*, *Smith* ex rel. *Zion Oil & Gas, Inc. v. Carillo*, 2019 WL 6328033, at *7 (D. Del. Nov. 26, 2019); *see also In re The Home Depot, Inc. S'holder Deriv. Litig.*, 223 F. Supp. 3d 1317, 1329 (N.D. Ga. 2016); *St. Clair Shores Gen. Emps' Ret. Sys. v. Eibeler*, 2006 WL 2849783, at *4-6 (S.D.N.Y. Oct. 4, 2006). Applicable here is *Aronson's* first prong, "which excuses demand if the complaint provides particularized factual allegations that raise a reasonable doubt that the directors are disinterested and independent." *In re The Home Depot*, 223 F. Supp. 3d at 1329. One may demonstrate a lack of independence (or an interest in the outcome of litigation) by showing that a majority of directors face a substantial likelihood of liability on the underlying claims. *See id.* Plaintiff has failed to meet this burden.

First, NiSource's corporate charter exculpates its directors from liability in lawsuits grounded in negligence, which prevents a finding of "a reasonable doubt that the directors are disinterested and independent." *In re The Home Depot*, 223 F. Supp. 3d at 1329. Second, and a wholly independent and dispositive basis for dismissing Plaintiff's 14(a) claim, the claim as pled is insufficient to demonstrate a likelihood of liability on the underlying claims.

#### 1. Section 102(b)(7) exculpation

"When the certificate of incorporation exempts directors from liability, the risk of liability does not disable them from considering a demand fairly unless particularized pleading permits the court to conclude that there is a substantial likelihood that their conduct falls outside the exemption." *In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995).

8

NiSource's directors are so exculpated. (D.I. 30 Ex. B Art. B(1)) ("[N]o director of the Corporation shall be liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director."). Delaware law is clear that this type of exculpatory provision extends to all breaches of fiduciary except those arising from the duty of loyalty or for bad faith or intentional breaches. *See* 8 Del. C. § 102(b)(7).

Plaintiff's 14(a) claim is grounded solely in negligence. Indeed, the Complaint expressly states as much: "This claim is based solely on negligence, not on any allegation of reckless or knowing conduct by or on behalf of the Proxy Defendants." (D.I. 2 ¶ 154) Thus, having failed to allege "bad faith, intentional misconduct, knowing violation of the law, or any other conduct for which the directors may be liable," Plaintiff has "not alleged Section 14(a) damages for which the individual Defendants could be personally liable such that the claims for relief against the Defendants are pleaded with particularity." *Carillo*, 2019 WL 6328033 at *8. Therefore, the *Aronson* test is not met, and demand is not excused.

In a footnote, Plaintiff challenges the applicability of the exculpatory provision to its 14(a) claim as being unconstitutional, in violation of the Supremacy Clause of the United States Constitution. (*See* D.I. 32 at 27 n.24) Plaintiff does not develop this argument – either in its briefing or at oral argument. In its footnote, Plaintiff cited no applicable caselaw and failed to even attempt to distinguish decisions of this Court and the Court of Chancery that have expressly applied 102(b)(7) exculpation provisions to 14(a) claims. *See Carrillo*, 2019 WL 6328033 at *3, *8; *see also In re Truecar, Inc. S'holder Derivative Litig.*, 2020 WL 5816761, at *12, 21-22 (Del. Ch. Sept. 30, 2020). Arguably, then, Plaintiff's constitutional argument is waived. *See John Wyeth & Bro. Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1076 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived."); *Guardant Health, Inc. v.*

9

*Found. Med., Inc.*, 2020 WL 59941, at *2 n.5 (D. Del. Oct. 9, 2020) (same).

In any event, the Court need not decide the Supremacy Clause issue because, even assuming the exculpation provision is unenforceable, Plaintiff has also failed to state a claim that the Director Defendants are liable for violating Section 14(a), as discussed below.

### 2. Failure to state a claim

To adequately state a 14(a) claim, the Complaint must allege: "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007) (internal quotation marks omitted). For purposes of considering the pending motion, the Court assumes without deciding that Plaintiff has adequately alleged a material misrepresentation or omission and that NiSource was injured by the same. Even so, the Complaint fails to allege that the proxy solicitation itself was an essential link in causing the harm to the company. Therefore, Plaintiff's 14(a) claim fails to state a claim on which relief may be granted.

Plaintiff alleges that at least four omissions from the 2017 and 2018 Proxy Statements render those statements materially misleading. The Proxy Statements allegedly fail to disclose that:

> (1) NiSource was knowingly and willfully violating state and federal minimum pipeline safety standards
>
> (2) NiSource ignored a "near miss" at one of its pipeline subsidiaries and failed to implement preventative practices and risk mitigation policies to protect public safety
>
> (3) NiSource did not maintain consistent and reliable records and necessary information for pipeline safety

>> (4) NiSource exhibited a flagrant organizational indifference towards minimum gas pipeline safety standards

(D.I. 32 at 27; *see also* D.I. 2 ¶ 156) As for injury caused by the allegedly misleading Proxy Statements, Plaintiff points to the re-election of directors and approval of certain executive compensation. (D.I. 2 ¶¶ 157-59)

Assuming, arguendo, that the allegations summarized in the preceding paragraph satisfy Plaintiff's pleading burden with respect to the first two elements of its 14(a) claim, that claim must still be dismissed because the Complaint lacks a plausible allegation that "that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Tracinda*, 502 F.3d at 228. That is, Plaintiff has failed to plead the essential element of an "essential link" – sometimes referred to by courts as "transaction causation," *In re AGNC Inv. Corp.*, 2018 WL 3239476, at *3 (D. Md. July 3, 2018).

The Complaint fails to plausibly allege an "essential link" between the Proxy Statements and the Greater Lawrence Explosion (or between the Proxy Statements and the financial harm suffered by NiSource in the wake of the explosion). At least in the Third Circuit, a 14(a) claim for damages must be based on a specific transaction being authorized by the allegedly misleading proxy. That is:

>> the mere fact that omissions in proxy materials, by permitting directors to win re-election, ***indirectly*** lead to financial loss through mismanagement will not create a sufficient nexus with the alleged monetary loss. Rather, damages are recoverable under Section 14(a) only when the votes for a specific corporate transaction requiring shareholder authorization, such as a corporate merger, are obtained by a false proxy statement, ***and that transaction was the direct cause of the pecuniary injury for which recovery is sought***. Thus, the [Directors'] re-election as directors did not create any cognizable harm because the shareholders' votes did not authorize the transactions that caused the losses.

11

*Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992) (emphasis added).

*G.E.* is directly on point.  Plaintiff alleges that as a result of the "improper re-election" of the Defendant Directors, the NiSource board "persist[ed] in the flagrant misconduct that ended up costing over $1 billion, including $109 million in record-breaking fines."  (D.I. 32 at 27)  Under *G.E.* this is "insufficient to satisfy the transaction causation requirement.  The pecuniary harm to [NiSource] that [Plaintiff] alleges resulted from [NiSource's] purported mismanagement" but not from a specific transaction authorized by the shareholders.  980 F.2d at 933.  Plaintiff, therefore, fails to adequately plead an essential link and, thereby, fails to state a 14(a) on which relief may be granted.  It follows that Plaintiff has also failed to demonstrate that demand has been excused with respect to its 14(a) claim, because Plaintiff has not shown that a majority of NiSource directors face a substantial likelihood of liability on the 14(a) claim.

Notably, Plaintiff failed to cite or address *G.E.* in its briefing.  Instead, in responding to the "essential link" argument, Plaintiff relies solely on out-of-circuit authority.  (*See* D.I. 32 at 28-29) (citing *In re Wells Fargo & Co. S'holder Derivative Litig.*, 282 F. Supp. 3d 1074, 1105 (N.D. Cal. 2017) and *In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1016 (N.D. Cal. 2007))  This Court, of course, is bound to follow *G.E.*, not (arguably conflicting) cases from the Ninth Circuit.[3]

---

[3] Although also not binding on this Court, it appears that numerous other courts have agreed with the approach of the Third Circuit.  *See, e.g.*, *Edward J. Goodman Life Income Tr. v. Jabil Circuit, Inc.*, 594 F.3d 783, 797 (11th Cir. 2010) (finding reelection of directors not essential link to losses from mismanagement); *In re AGNC Investment Corp.*, 2018 WL 3239476, at *6 (D. Md. July 3, 2018) ("Transaction causation mandates that the challenged conduct that caused the economic loss be an action authorized by shareholder vote, not later misconduct undertaken by the Board."); *Alaska Elec. Pension Fund v. Olofson*, 2009 WL 1580296, at *8 (D. Kan. June 3, 2009) (finding claim insufficient when only assertion is "that the injury would not have occurred absent the election of the Board pursuant to the proxy statement"); *see also Britton v. Parker*, 2009 WL 3158133, at *13 (D. Colo. Sept. 23, 2009) (collecting cases for proposition that loss must be caused by action authorized by proxy, not by mismanagement).

At the hearing, Plaintiff attempted – but failed – to distinguish *G.E.* Plaintiff suggested that in *G.E.* "there was no direct link between the directors' misconduct and the ultimate financial damage to the company," whereas here "the plaintiff alleges the board members were elected to continue to recklessly preside over a company that was flagrantly indifferent to a mission critical compliance." (Tr. at 16) Plaintiff further suggested that *G.E.* is inapplicable here, as "we have directors who are responsible for the underlying misconduct based on their violation of *Caremark* duties." (*Id.* at 23) The Director Defendants' reading of *G.E.* is far more persuasive. As Defendants explain, *G.E.* "involved alleged wrongdoing by the directors who were elected into office," including pre- and post-election activities such as "supervising a nuclear power plant" and "alleged illegal dumping." (*Id.* at 25) Confronting these very analogous allegations, the *G.E.* Court could hardly have been clearer, concluding: "The mere fact that omissions in proxy materials by permitting directors to win reelection indirectly led to a financial loss through mismanagement will not create a sufficient nexus with the alleged monetary loss." 980 F.2d at 933 (quoted by counsel at Tr. at 25).

Accordingly, the Court will dismiss Plaintiff's 14(a) claim.

**B.     The Court Declines To Exercise Jurisdiction Over The Delaware Law Claims**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiff's 14(a) claim presents a federal question. *See also* 15 U.S.C. § 78aa. After the Court dismisses the 14(a) claim, the remaining causes of action in the Complaint – breach of fiduciary duty of loyalty (the *Caremark* claim), breach of the fiduciary duty of candor, and unjust enrichment – are Delaware state law claims. While the Court has discretion to exercise supplemental jurisdiction over these state law claims, *see* 28 U.S.C. § 1367(a) (applying to "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or

controversy"), the Court declines to do so, *see id.* § 1367(c)(3). *See also id.* § 1367(c)(2) (allowing district court to decline to exercise supplemental jurisdiction where, as here, "the [state] claim[s] substantially predominate[] over the claim or claims over which the district court has original jurisdiction").

Indeed, the Third Circuit has stated that a district court "'***must*** decline' to exercise supplemental jurisdiction in such circumstances 'unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification'" for exercising supplemental jurisdiction. *Stone v. Martin*, 720 F. App'x 132, 136 (3d Cir. 2017) (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)). Neither party has identified any affirmative justification for the Court to exercise jurisdiction over the remaining state-law claims. *See generally Kates* ex rel. *Metlife, Inc. v. Kandarian*, 2020 WL 4287374, at *13 (D. Del. July 27, 2020) (recommending denial of exercise of supplemental jurisdiction over derivative *Caremark* claim), *R&R adopted*, C.A. No. 19-1266-LPS-JLH D.I. 56 (D. Del. Sept. 8, 2020); *see also Carillo*, 2019 WL 6328033 at *1 n.1 ("I dismiss the two Delaware law claims for lack of demand, but, in the alternative, if demand were excused, I would decline to exercise supplemental jurisdiction over them. The way the operative complaint is written makes it pretty clear that the Section 14(a) claims are asserted merely as a thinly-pled basis for bringing the case to federal court.").

The Complaint also alleges that this Court has "subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity between plaintiffs and defendants and because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." (D.I. 2 ¶ 17) The Complaint does nothing, however, to substantiate this allegation. (*See* D.I. 29 at 30 n.29) ("Plaintiff has not met its burden to show that the Court's diversity jurisdiction under 28 U.S.C. § 1332(a) could be invoked, because Plaintiff is organized as a trust under Michigan law

14

and it has not alleged the citizenship of its participants and beneficiaries.")  At the oral argument, Plaintiff's counsel acknowledged that Plaintiff has not met its burden to demonstrate that this Court has diversity jurisdiction.  (*See* Tr. at 23)

Accordingly, the Court will dismiss without prejudice Plaintiff's state-law claims.

## V.  CONCLUSION

An appropriate order follows.